REVISED SEPTEMBER 3, 2008

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 26, 2008

Charles R. Fulbruge III
Clerk

No. 05-11370

HOME OWNERS MANAGEMENT ENTERPRISES, INC, as assignee of
Holmes-Redding Builders Inc

Plaintiff-Appellee

v.

MID-CONTINENT CASUALTY COMPANY

Defendant-Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:04-CV-2061

Before HIGGINBOTHAM, BENAVIDES, and DENNIS, Circuit Judges.

PER CURIAM:[*]

This case brings to us a dispute over an insurer's duties to defend and indemnify its insured, a home builder, against claims of defective construction. The parties consented to trial before a magistrate judge, who, on cross-motions for summary judgment, held that the insurer breached its duties. This appeal

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

primarily focuses on the insurer's duty to indemnify. For the reasons that follow, we affirm.

I

Holmes-Redding Builders, Inc., is a homebuilder, which sold a house to Kevin and Sharon Twomey in 2000. The sales contract included a limited warranty for the home administered by Home Owners Management Enterprises, Inc. (HOME). Warranty Underwriters Insurance Co. (WUIC) issued the warranty. In the event that Holmes-Redding failed to fulfill its warranty obligations, the warranty provided that HOME/WUIC would perform those obligations. The warranty also imposed reimbursement obligations on Holmes-Redding for amounts spent by HOME/WUIC to satisfy Holmes-Redding's warranty obligations. Holmes-Redding also had a commercial general liability policy (CGL policy) issued by Mid-Continent Casualty Co.[1]

The Twomeys' house experienced structural and cosmetic damages that resulted from construction defects. Unable to reach a resolution with Holmes-Redding, the Twomeys sued Holmes-Redding and others in state court for negligence, breach of contract, breach of warranty, Deceptive Trade Practices Act violations, and fraud. The Twomeys also filed a claim under the warranty. The Twomeys eventually added HOME and WUIC as defendants, alleging they breached their warranty obligations. HOME and WUIC asserted a cross-claim against Holmes-Redding for reimbursement under the warranty.

Holmes-Redding notified Mid-Continent of the Twomeys' lawsuit. Mid-Continent concluded that the Twomeys' claims fell outside the scope of the CGL policy, and declined to defend or indemnify Holmes-Redding. Holmes-Redding engaged counsel on its own.

---

[1] Holmes-Redding had two separate CGL policies, one effective from July 1, 2000, to July 1, 2001, and the other from July 1, 2001, to July 1, 2002. Neither party asserts that this impacts the outcome of this case.

The Twomeys' claims against Holmes-Redding, HOME, and WUIC were referred to arbitration. The arbitrator ruled in the Twomeys' favor, awarding them $218,000 in "repair cost" damages, $70,000 in attorneys' fees, and $49,915 in expert and arbitration fees. The arbitrator ruled that WUIC was obligated under the warranty to pay any portion of the "repair cost" damages that Holmes-Redding did not pay. The state trial court confirmed the arbitration award. Mid-Continent did not indemnify Holmes-Redding.

HOME paid the "repair cost" damages plus interest to the Twomeys. According to the parties, the remaining awards for attorneys' fees and expert and arbitration fees remain unpaid. HOME and WUIC's cross-claim for reimbursement against Holmes-Redding was severed from the Twomey lawsuit. HOME and WUIC prevailed on that claim, and obtained a state court judgment holding Holmes-Redding liable for the amounts paid to the Twomeys as well as for other expenses incurred. HOME, WUIC, and Holmes-Redding settled, with Holmes-Redding agreeing to assign to HOME its claims against Mid-Continent.

HOME, as Holmes-Redding's assignee, sued Mid-Continent for breach of contract in September 2004. HOME asserted that Mid-Continent breached its duty to defend Holmes-Redding and that Mid-Continent had a duty to indemnify Holmes-Redding for the full amount of the arbitration award. HOME also sought prejudgment interest and attorneys' fees.

The parties consented to trial and judgment by a magistrate, with appeal being taken directly to this court. On cross-motions for summary judgment, the magistrate ruled for HOME on all of its claims. The magistrate awarded HOME $135,521.01 for Mid-Continent's breach of its duty to defend Holmes-Redding; $337,915 for the Twomeys' arbitration award, which includes both the "repair costs" damages HOME paid and the remaining unpaid amounts; $135,000 in attorneys' fees for this lawsuit; and $68,637.48 in prejudgment interest. Mid-Continent appeals.

## II

We review a grant of summary judgment de novo.[2] Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[3] "In determining whether summary judgment is appropriate, all of the evidence introduced and all of the factual inferences from the evidence are viewed in a light most favorable to the party opposing the motion and all reasonable doubts about the facts should be resolved in favor of the nonmoving party."[4] We review the interpretation of an insurance contract de novo.[5] As this is a diversity case, we apply Texas substantive law.[6]

## III

The CGL policy provides that Mid-Continent "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." The policy then provides, in pertinent part, that it applies to "bodily injury" and "property damage" that "is caused by an 'occurrence.'" The policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

## IV

Mid-Continent initially urged that it had neither a duty to defend nor a duty to indemnify Holmes-Redding because a claim of defective construction that

---

[2] St. Paul Guardian Ins. Co. v. Centrum GS Ltd., 283 F.3d 709, 712 (5th Cir. 2002).

[3] Fed. R. Civ. P. 56(c).

[4] Terrebonne Parish Sch. Bd. v. Mobil Oil Corp., 310 F.3d 870, 877 (5th Cir. 2002).

[5] St. Paul Guardian Ins. Co., 283 F.3d at 713.

[6] See id.

damaged only the insured's work falls outside of the CGL policy's scope. This is because such a claim is not one for "property damage" caused by an "occurrence" as those terms are used in the policy. Mid-Continent noted in its opening brief that this court had certified questions to the Texas Supreme Court on this issue.[7]

The Texas Supreme Court answered our questions in Lamar Homes, Inc. v. Mid-Continent Casualty Co.[8] The court "conclude[d] that allegations of unintended construction defects may constitute an 'accident' or 'occurrence' under the CGL policy and that allegations of damage to or loss of use of the home itself may also constitute 'property damage' sufficient to trigger the duty to defend under a CGL policy."[9] The court did not reach the duty to indemnify because "that duty is not triggered by allegations but rather by proof at trial."[10]

Lamar Homes controls the disposition of this issue. Mid-Continent conceded its duty to defend during oral argument in light of Lamar Homes. We affirm the award of damages for Mid-Continent's breach of its duty to defend, and turn our attention to Mid-Continent's other duty to indemnify issues.

V

Mid-Continent contests its duty to indemnify on several other grounds. We note initially that Mid-Continent acknowledges that the CGL policy is a liability contract. "In a liability contract, the insurer agrees to cover liability for damages. If the insured is liable, the insurance company must pay the damages."[11] "In the event a judgment is rendered against the insured, the

---

[7] See Lamar Homes, Inc. v. Mid-Continent Cas. Co., 428 F.3d 193 (5th Cir. 2005) (per curiam).

[8] 242 S.W.3d 1 (Tex. 2007).

[9] Id. at 4.

[10] Id. at 5.

[11] Travelers Indem. Co. v. Calvert Fire Ins. Co., 836 F.2d 850, 853 (5th Cir. 1988) (quoting Conoco, Inc. v. Republic Ins. Co., 819 F.2d 120, 122 (5th Cir. 1987)) (internal

insurer's liability to pay attaches at that time. The obligation to pay continues until the judgment is satisfied."[12] Thus, unlike under an indemnity policy, Holmes-Redding did not have to pay the judgment in order to trigger Mid-Continent's duty to indemnify.[13]

## A

Mid-Continent first argues that under the CGL policy, its duty to indemnify is limited to sums that an insured is "legally obligated to pay."[14] Mid-Continent contends that this court in Data Specialists, Inc. v. Transcontinental Insurance Co.[15] held that under Texas law, the phrase "legally obligated to pay" means obligated as a matter of tort law, not as a matter of contract. Mid-Continent says that, while the Twomeys pursued both tort and contract claims against Holmes-Redding, the arbitrator based its award only on breach of contract. Thus, Mid-Continent urges, it has no duty to indemnify.

---

quotations omitted); see also YMCA of Metro. Ft. Forth v. Commercial Standard Ins. Co., 552 S.W.2d 497, 504 (Tex. Civ. App. 1977).

[12] YMCA, 552 S.W.2d at 504; see also 1 Allan D. Windt, Insurance Claims and Disputes § 6.5 (5th ed. 2007) ("If the policy provides liability insurance, the insurer becomes liable immediately on the entry of judgment against the insured.").

[13] See Travelers Indem. 836 F.2d at 853-54 ("In an indemnity contract, by contrast, the insurer agrees to reimburse expenses to the insured that the insured is liable to pay and has paid." (quoting Conoco, 819 F.2d at 122) (internal citations omitted)); YMCA, 552 S.W.2d at 504 (same); Couch on Insurance § 103:4 (3d ed. 1997) ("The major substantive distinction between a liability policy and an indemnity contract is that payment of a claim by the insured is a condition precedent to the insured's right to recover under the indemnity contract, but not under the liability contract.").

[14] The insurance policy provides, "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies."

[15] 125 F.3d 909 (5th Cir. 1997).

Mid-Continent did not raise this below. We generally do not consider arguments that are urged for the first time on appeal, and we do not do so here.[16]

B

Mid-Continent next contends that, because HOME paid the "repair cost" portion of the arbitration award, it "extinguished" Holmes-Redding's liability to the Twomeys. This is because the one-satisfaction rule prevents the Twomeys from recovering those damages a second time from Holmes-Redding. Thus, because Holmes-Redding cannot be forced to pay these amounts to the Twomeys, neither it nor HOME as its assignee had a claim against Mid-Continent for indemnification of those amounts. Neither the parties nor the magistrate cite to any cases that are on point.

We are not persuaded by this argument. The central reason is that HOME's payment did not absolve Holmes-Redding of its legal responsibility for the damages. In its role here, HOME was only secondarily liable for the judgment the Twomeys won. HOME was not Holmes-Redding's insurer, and its payment to the Twomeys did not indemnify Holmes-Redding.[17] Holmes-Redding was legally obligated to reimburse HOME for the amounts expended on its

---

[16] See, e.g., LeMaire v. La. Dep't of Transp. & Dev., 480 F.3d 383, 387 (5th Cir. 2007) ("[A]rguments not raised before the district court are waived and cannot be raised for the first time on appeal."); Keelan v. Majesco Software, Inc., 407 F.3d 332, 339 (5th Cir.2005) ("It is well settled in this Circuit that the scope of appellate review on a summary judgment order is limited to matters presented to the district court."); N. Alamo Water Supply Co. v. City of San Juan, 90 F.3d 910, 916 (5th Cir. 1996) ("We will not consider an issue that a party fails to raise in the district court, absent extraordinary circumstances.").

[17] That HOME is not an insurer and its payment did not indemnify Holmes-Redding distinguishes this case from Mid-Continent Insurance Co. v. Liberty Mutual Insurance Co., where the insured had been fully indemnified by one of its two primary insurance carriers. See 236 S.W.3d 765, 775-76 (Tex. 2007) ("We hold, therefore, that a fully indemnified insured has no right to recover an additional pro rata portion of settlement from an insurer regardless of that insurer's contribution to the settlement. Having fully recovered its loss, an insured has no contractual rights that a co-insurer may assert against another co-insurer in subrogation." (emphasis added)). Unlike the insured in Mid-Continent, Holmes-Redding has not been indemnified fully or otherwise.

behalf. This obligation was confirmed by the state trial court, which entered judgment against Holmes-Redding in favor of HOME.

The Fourth Circuit long ago rejected an "extinguishment" argument similar to Mid-Continent's.[18] There, the insured had been hired to construct a manufacturing plant for a company. A person was "injured by coming into contact with a high voltage electrical current carried by wires maintained by the [insured], which had negligently failed to provide proper safeguards against the danger."[19] The injured party obtained a judgment against the insured and the company that had hired the insured. The company paid the judgment under threat of execution. The contract between the company and the insured provided that the insured would indemnify the company, and the company deducted the amount it had paid to satisfy the judgment from what it owed to the insured under the construction contract. The insured then sought to recover the amount the company withheld from its insurer, which denied coverage. While the insurer admitted there would be coverage had the injured party enforced the judgment against the insured directly or "had by legal process collected" the judgment from the insured, the insurer argued that payment of the judgment by the company had "extinguished" its liability under the policy. The Fourth Circuit disagreed,

> [T]he fact that judgment was obtained against the [company] can make no difference, for the primary liability established by the judgment was that of the [insured] and there can be no question but that, upon payment of the judgment, the [company], being only secondarily liable, had the right to recover against the [insured] for any amount paid thereunder. The liability of the [insured] established by the judgment was not extinguished, therefore, by the payment made by the [company] but the right to enforce it was transferred to the [company]. As the [insured] remained liable for

---

[18] See U.S. Fid. & Guar. Co. v. Va. Eng'r Co., 213 F.2d 109 (4th Cir. 1954).

[19] Id. at 110.

the amount of the judgment, it can make no difference with respect to the coverage of the policy that the liability was payable by the [insured] to the [company] rather than to [the injured person].

. . . The position of the [insurer] comes to this: that it is absolved of its obligation to pay the liability imposed by law upon the [insured] because that liability, although it has in fact been paid by the [insured], has been enforced through collection from another whom the [insured] was bound at law to reimburse. We know of no principle of law which would sustain this position.[20]

We, too, "are not impressed by the argument." While Mid-Continent is right that the Twomeys could not collect the "repair cost" damages a second time, its "extinguishment" argument falters because Holmes-Redding was still liable for the damages caused by its negligence. The proper question is whether that liability was covered by the policy, that is, whether there was property damage caused by an occurrence and which is not subject to an exclusion.

Mid-Continent argues that the "contractual liability" exclusion, also referred to as exclusion b, relieves it of any duty to indemnify based on Holmes-Redding's obligations to HOME. The exclusion provides,

This insurance does not apply to: "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:
   (1) That the insured would have in the absence of the contract or agreement; or
   (2) Assumed in a contract or agreement that is an "insured contract . . . ."

Mid-Continent argues that Holmes-Redding assumed liability to reimburse HOME through the warranty agreement, and therefore, this exclusion is directly applicable. Mid-Continent contends that neither exception applies here.

---

[20] Id. at 112 (citations omitted).

Assuming that the exclusion is applicable, which is not without doubt given our and other courts' construction of it and similar exclusions,[21] we conclude that an exception applies. Although Holmes-Redding was contractually obligated to reimburse HOME, Holmes-Redding would have been liable to HOME in the absence of the warranty. We have explained that "Texas courts liberally apply the doctrine of legal subrogation in instances when one person involuntarily pays the debt for which another person is primarily liable."[22] The Texas Supreme Court has recently explained that "equitable (or legal) subrogation does not depend on contract but arises in every instance in which one person, not acting voluntarily, has paid a debt for which another was

---

[21] See Federated Mut. Ins. Co. v. Grapevine Excavation Inc., 197 F.3d 720, 726 (5th Cir. 1999) ("This exclusion operates to deny coverage when the insured assumes responsibility for the conduct of a third party. As GEI is not being sued as the contractual indemnitor of a third party's conduct, but rather for its own conduct, the exclusion is inapplicable." (Texas law)); see also, e.g., Ingalls Shipbuilding v. Fed. Ins. Co., 410 F.3d 214, 222 (5th Cir. 2005) ("'[C]ourts have consistently interpreted the phrase 'liability assumed by the insured under any contract' to apply only to indemnification and hold-harmless agreements, whereby the insured agrees to 'assume' the tort liability of another.'" (quoting 1 B. Ostrager & T. Newman, Handbook on Insurance Coverage Disputes § 7.05, at 460 (12th ed.2004))); U.S. Fid. & Guar. Co., 213 F.2d at 112 ("It is not reasonable to suppose that, when the insured was taking insurance to protect against liability imposed by law, it was intended to exclude coverage of claims for which the law imposed liability on the insured, merely because insured had agreed to protect another against secondary liability on account of such claims."); Lennar Corp. v. Great Am. Ins. Co., 200 S.W.3d 651, 693 (Tex. App.–Houston 2006) ("Exclusion B(2) precludes coverage when the insured contractually assumes liability for the conduct of a third party such as through an indemnity or hold harmless agreement."); Broadmoor Anderson v. Nat'l Union Fire Ins. Co. of La., 912 So.2d 400, 407 (La. App. 2005) ("A second, reasonable and more narrow interpretation would limit [this exclusion] to a specific assumption by the insured of liability that solely results from the negligence or contractual breach of a third party."); Gibbs M. Smith, Inc. v. U.S. Fid. & Guar. Co., 949 P.2d 337, 341 (Utah 1997) ("The pertinent law abundantly confirms that a liability insurance contract exclusion clause excludes only contracts in which the insured assumes the tort liability of another.").

[22] In re Canion, 196 F.3d 579, 585-86 (5th Cir. 1999); see also 68 Tex. Jur. 3d Subrogation § 9 ("Application of the doctrine of equitable subrogation is said to be 'the purest of equities,' and the courts of Texas are said to be particularly hospitable to it. . . . It is applicable when one person, acting involuntarily, has paid a debt for which another was primarily liable, unjustly enriching the latter.").

primarily liable and which in equity should have been paid by the latter."[23] Indeed, as the United States Supreme Court opined, "there are few doctrines better established than that a surety who pays the debt of another is entitled to all the rights of the person he paid to enforce his right to be reimbursed."[24] We think that Holmes-Redding would have been liable to HOME under the theory of legal subrogation. "When, as here, liability could be imposed pursuant to either a contractual indemnity provision or a generally applicable legal principle, the contractual liability exclusion will not bar coverage."[25]

Accordingly, we reject Mid-Continent's "extinguishment" argument under these circumstances.

C

Mid-Continent next argues that it has no duty to indemnify Holmes-Redding for the unpaid portions of the arbitrator's award. Its argument is essentially that "the Twomeys, having a direct right to recover from Mid-Continent under the policies as judgment creditors of Holmes-Redding, can still attempt to collect the unpaid portions of the judgment from Mid-Continent after Mid-Continent pays those amounts to Home." This "continued existence of a risk of double payment," Mid-Continent says, means that HOME cannot collect the unpaid portions of the arbitration award. Mid-Continent cites no authority for

---

[23] Mid-Continent, 236 S.W.3d at 774; 68 Tex. Jur. 3d Subrogation § 3 ("The doctrine of subrogation is given a liberal application and is broad enough to include every instance in which one person, not acting voluntarily, has paid a debt for which another was primarily liable and which in equity and good conscience should have been discharged by the latter.").

[24] Pearlman v. Reliance Ins. Co., 371 U.S. 132, 136-37 (1962); see also Restatement (Third) Suretyship & Guaranty § 22 (explaining that "when the principal obligor is charged with notice of the secondary obligation it is the duty of the principal obligor to reimburse the secondary obligor to the extent that the secondary obligor (a) performs the secondary obligation; or (b) makes a settlement with the obligee that discharges the principal obligor, in whole or part, with respect to the underlying obligation").

[25] Federated Mutual, 197 F.3d at 727.

this proposition. In any event, Mid-Continent cannot be said to have raised this argument below,[26] and we will not wade into it for the first time now.[27]

D

In a final shift, Mid-Continent urges that, if its no duty to indemnify arguments fail, "then the indemnity portion of the case should be remanded for trial based on the standards of Lamar Homes." This is because "[t]his case was decided by the trial court on summary judgment without the benefit of guidance from the Texas Supreme Court on the occurrence issue," that is, the meaning of "occurrence" in the CGL policy.

Mid-Continent completely fails to explain how the magistrate's interpretation of "occurrence" differs from that in Lamar Homes. The magistrate concluded that negligent construction can constitute an "occurrence," and in essence looked to whether the damage caused by the insured's negligent acts was unintended and unexpected.[28] Lamar Homes concludes that negligent

---

[26] See Vogel v. Veneman, 276 F.3d 729, 733 (5th Cir. 2002) ("A party must have raised an argument 'to such a degree that the trial court may rule on it.'" (quoting In re Fairchild Aircraft Corp., 90 F.3d 910, 916 (5th Cir. 1996))). Mid-Continent can be reasonably understood to have argued only that it had no duty to indemnify the unpaid amounts because neither Holmes-Redding nor HOME had paid those amounts to the Twomeys. The magistrate rejected this argument because the CGL policy is a liability contract, not an indemnity contract, and therefore the duty to indemnify was triggered when judgment was entered against Holmes-Redding. See YMCA, 552 S.W.2d at 504. Mid-Continent has made no effort to show that this is error.

[27] See supra note 16.

[28] The magistrate primarily relied on our decision in Federated Mutual and the Texas Supreme Court's decision in Cowan. See Federated Mutual, 197 F.3d at 725 ("Following Orkin, both state and federal courts in Texas have interpreted the terms 'accident' and 'occurrence' to include damage that is the 'unexpected, unforeseen or undesigned happening or consequence' of an insured's negligent behavior."); id. at 726 ("T&S's fourth amended petition alleges that GEI acted negligently—that is, 'caus[ed] damage which is undesigned and unexpected'—which, if proved to be true, constitutes an 'accident' within the definition ascribed to that term by the Texas Supreme Court."); Trinity v. Universal Ins. Co. v. Cowan, 945 S.W.2d 819, 828 (Tex. 1997) ("We think such a construction would also conflict with our holding that an 'accident' includes the 'negligent acts of the insured causing damage which is undesigned and unexpected.'").

12

construction can constitute an "occurrence," and explains that "a deliberate act, performed negligently, is an accident if the effect is not the intended or expected result; that is, the result would have been different had the deliberate act been performed correctly."[29] In other words, "a claim does not involve an accident or occurrence when either direct allegations purport that the insured intended the injury (which is presumed in cases of intentional tort) or circumstances confirm that the resulting damage was the natural and expected result of the insured's actions, that is, was highly probable whether the insured was negligent or not."[30]

As we see no material difference between the two, and as Mid-Continent points to none, we find no reversible error.

VI

We have no occasion to consider Mid-Continent's arguments regarding prejudgment interest and the award of attorneys' fees in this suit.[31]

AFFIRMED.

---

[29] 242 S.W.3d at 8; see also id. at 9 ("Here, the complaint alleges an 'occurrence' because it asserts that Lamar's defective construction was a product of its negligence. No one alleges that Lamar intended or expected its work or its subcontractors' work to damage the DiMares' home.").

[30] Id. at 9. To the extent that Mid-Continent intended to argue that fact issues preclude summary judgment on whether the facts proved during the arbitration constitute an "occurrence," Mid-Continent did not raise this in its opening brief, and has therefore abandoned it. *See Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994) ("An appellant abandons all issues not raised and argued in its initial brief on appeal."). Had *Lamar Homes*, which was decided after the initial briefing in this case, actually announced a meaning of "occurrence" materially different from the magistrate's interpretation, we might face a different situation.

[31] Mid-Continent argued that if any of the duty to defend or duty to indemnify holdings were reversed, the prejudgment interest and attorneys' fees awards should be adjusted accordingly.