**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 00-11339
Summary Calendar
_____

ST. PAUL GUARDIAN INSURANCE COMPANY,

Plaintiff-Appellee,

VERSUS

CENTRUM GS LIMITED; GOODYORK CORPORATION; STEINER & ASSOCIATES,
INC.; YAROMIR STEINER; BRENDA BRUSHABER,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Northern District of Texas

_____

March 11, 2002

Before EMILIO M. GARZA, STEWART and PARKER, Circuit Judges.

ROBERT M. PARKER, Circuit Judge:

Centrum GS Limited, et al., appeal the district court's denial
of their motion for summary judgment and grant of summary judgment
in favor of St. Paul Guardian Insurance Company upon a finding that
the insurance company had no duty to defend any defendant in Gerry
Perdue's underlying state court action. We affirm in part, reverse
in part and remand for further proceedings not inconsistent with

this opinion.

## FACTS AND PROCEDURAL HISTORY

The relevant facts in this case are not in dispute. St. Paul Guardian Insurance Company (hereinafter "St. Paul") is an insurance company headquartered in St. Paul, Minnesota. Centrum GS Limited (hereinafter "Centrum") is a Texas limited partnership and owner of the Centrum Building, a nineteen-story office tower located in Dallas, Texas.[1] Goodyork Corporation (hereinafter "Goodyork") is a Texas corporation headquartered in Los Angeles, California and general partner of Centrum. Steiner & Associates, Inc. (hereinafter "Associates") is a Florida corporation and property manager of the Centrum Building. Yaromir Steiner (hereinafter "Steiner") is a citizen of the state of Florida, employed by Associates and an officer of Associates. Brenda Brushaber (hereinafter "Brushaber") is a citizen of the state of Texas and employed by Associates as the General Manager of the Centrum Building.[2] Gerry Perdue (hereinafter "Perdue") was a building engineer hired during the construction of the Centrum Building. Under various property management companies, Perdue maintained this position for approximately eight years until he assumed the position of Chief Building Engineer for the Centrum Building

---

[1] Centrum's only limited partner is Spurlington Incorporated, a Texas corporation headquartered in Los Angeles, California. Spurlington Incorporated is not a party to this suit.

[2] We refer to Centrum, Goodyork, Associates, Steiner and Brushaber collectively as "Appellants."

2

beginning February 1, 1995.

In 1994, St. Paul issued a Commercial General Liability insurance policy (hereinafter "CGL policy") to Centrum effective from December 23, 1994, to December 23, 1995. The CGL policy covers *inter alia*, bodily injury, property damage and personal injury liability.

On March 6, 1995, Perdue's employment as Chief Building Engineer was terminated. Perdue filed suit against Brushaber, Associates and Steiner on August 23, 1995. Perdue's claims included wrongful termination, intentional infliction of emotional distress, libel, slander, invasion of privacy, fraud, negligence and breach of contract. On February 7, 1996, Perdue filed his First Amended Original Petition adding Centrum and Goodyork as defendants. On July 18, 1997, Perdue filed his Fourth Amended Original Petition alleging that on or about December 21, 1994, Steiner, Brushaber and Associates, on their behalf and on behalf of Centrum and Goodyork, entered into an employment contract with him for a one year period beginning February 1, 1995.

Perdue further alleged that he was wrongfully terminated on March 6, 1995, and subsequent to his termination, Appellants hired eight uniformed Dallas police officers to patrol the building's lobby and parking garage and Appellants also circulated to the general public, including contractors, tenants and customers in the building, color "WANTED POSTERS" and a memorandum requesting anyone

3

who saw him to call security. The "WANTED POSTERS" allegedly included a color photograph of Perdue, his name, his home address, his driver's license number, his social security number and his car tag number. Perdue also alleged that Appellants made defamatory statements about him and that Bill Jones, an employee and agent of Appellants, stated that Perdue tampered with or cut off pumps at the Centrum Building.

Perdue contends that his wrongful termination caused him to suffer damages including loss of salary, bonuses, benefits, commissions, medical expenses and benefits, retirement benefits, vacation, insurance and a down payment on an automobile financed during his employment. Additionally, Perdue contends that as a result of Appellants' libel, slander, invasion of privacy and intentional infliction of emotional distress, he has suffered mental distress, mental anguish, physical sickness and loss of reputation.

St. Paul first received notification of Perdue's claims against Centrum on February 26, 1997, when it received from Appellants' counsel a copy of the suit papers from the Perdue lawsuit. On June 18, 1997, St. Paul filed a complaint seeking a declaratory judgment that it has no duty to defend or indemnify Centrum or any other defendant in Perdue's state court action. Subsequently, St. Paul filed a motion for summary judgment contending that Perdue's claims are not covered under the CGL policy and thus it has no duty to defend nor indemnify Appellants.

4

Appellants in turn filed a cross-motion for summary judgment arguing that Perdue's claims are covered under the CGL policy and therefore, St. Paul is obligated to defend Appellants.

Perdue alleged both physical damages (mental distress, mental anguish, physical sickness and loss of reputation resulting from slander and invasion of privacy) and economic damages (lost salary, bonuses, benefits, health insurance, vacation, commissions and loss of property resulting from wrongful termination) in his underlying state court action. Although the district court agreed that Perdue's economic damages resulting from wrongful termination would be covered under the definition of personal injury as that term is defined in the CGL policy, the court held that Perdue's claims for economic damages were not covered because the damages were not the result of a personal injury offense as defined in and required under the CGL policy for personal injury coverage.

Furthermore, the district court found that under Texas law, Perdue alleged facts sufficient to state a cause of action for invasion of privacy and slander as those terms are defined in the personal injury provisions of the CGL policy. However, the district court found that Perdue's alleged physical damages from the personal injury offenses, invasion of privacy and slander, did not result from Appellants' "business activity" (owning and managing property) as also required for coverage under the personal injury provisions of the CGL policy. Therefore, the district court held that Perdue's claims for physical damages resulting from

5

personal injury offenses were not covered and that St. Paul had no duty to defend or indemnify under the personal injury provisions of the CGL policy. St. Paul's motion for summary judgment was granted and Appellants' cross-motion for summary judgment was denied.

On this appeal, Appellants argue that 1) the district court erred in not granting summary judgment to Appellants because sufficient facts were pled in the Perdue lawsuit to potentially state a claim under the CGL policy's personal injury provisions, 2) the district court erred in granting summary judgment to St. Paul in finding that St. Paul had no duty to defend under the CGL policy's personal injury provisions, 3) the district court erred in not granting summary judgment to the Appellants on St. Paul's late notice defense, and 4) the district court erred in excluding Perdue's libel and libel *per se* claims as personal injury offenses.

### STANDARDS OF REVIEW

We review a district court's grant of summary judgment *de novo*. *New York Life Ins. Co. v. Travelers Ins. Co.*, 92 F.3d 336, 338 (5th Cir. 1996)(citation omitted). "On summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S. Ct. 993, 994, 8 L. Ed. 2d 176 (1962). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

6

affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). We review a district court's interpretation of an insurance contract *de novo.* *Potomac Ins. Co. of Ill. v. Jayhawk Med. Acceptance Corp.,* 198 F.3d 548, 550 (5th Cir. 2000).

**ANALYSIS**

"In a diversity case state law provides the elements of the plaintiff's case." *Thrash v. State Farm Fire & Cas. Co.,* 992 F.2d 1354, 1356 (5th Cir. 1993) (citation omitted). "In Texas, insurance policies are construed according to ordinary contract principles. The interpretation of an insurance policy is a question of law." *New York Life Ins. Co.,* 92 F.3d at 338 (citations omitted).

Under Texas law, courts follow the "Eight Corners" or "Complaint Allegation" rule to determine if there is a duty to defend. *Id.* at 338 (citing *Gulf Chem. & Metallurgical Corp. v. Associated Metals & Minerals Corp.,* 1 F.3d 365, 369 (5th Cir. 1993)). "This rule requires the trier of fact to examine only the allegations in the [underlying] complaint and the insurance policy in determining whether a duty to defend exists." *Id.* "The duty to defend arises when a third party sues the insured on allegations that, if taken as true, potentially state a cause of action within

the terms of the policy." *Houston Petroleum Co. v. Highlands Ins. Co.*, 830 S.W.2d 153, 155 (Tex. App.-Houston [1st Dist.] 1990, writ denied)(citation omitted).

Appellants argue that the district court erred in not granting summary judgment in their favor because sufficient facts were pled in the Perdue lawsuit to potentially state a claim under the CGL policy's personal injury provisions. The personal injury provisions of the CGL policy state that coverage is provided for damages for personal injuries that: 1)result from the insured's business activities, and 2)are caused by a personal injury offense.

The district court found that Perdue stated at least two claims (slander and invasion of privacy) that fell within the CGL policy's definition of personal injury offense. However, St. Paul asserts that Perdue's claims were not the result of Appellants' business activities and alternatively, that Appellants' late notice of suit negates coverage under the CGL policy provisions. In finding that the "business activity" criterion was not satisfied, the district court did not reach the merits of St. Paul's late notice defense.

The CGL policy does not define the term "business activity." Appellants argue that the circumstances relating to the termination of an employee are "business activities" while St. Paul argues that circumstances relating to the termination of an employee are internal employment practices and are not a "business activity."

8

When the language of an insurance policy is not ambiguous, it is our duty to give the words used their plain meaning. *See Houston Petroleum Co.*, 830 S.W.2d at 155 (citing *Puckett v. U.S. Fire Ins. Co.,* 678 S.W.2d 936, 938 (Tex. 1984)). "[W]hen the language of a policy is susceptible to more than one construction, 'the polic[y] should be construed strictly against the insurer and liberally in favor of the insured.'" *Gulf Chem. & Metallurgical Corp. v. Associated Metals & Minerals Corp.*, 1 F.3d 365, 369 (5th Cir. 1993) (quoting *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 666 (Tex. 1987)). "And where the question of interpretation 'involves an exception or limitation on [the insurer's] liability under the policy, an even more stringent construction is required.'" *Id.*

The district court characterized the Appellants' actions as "the posting of an employee's personal and private information around [the] employee's former place of employment, for public view and possible misuse by others" and then found this inconsistent with the Appellants' "business activity" of owning and managing property. We disagree.

Perdue's Fourth Amended Original Petition alleges that the complained of actions, including the personal injury offense of invasion of privacy, were undertaken by Brushaber as part of her property management of the Centrum Building to protect its tenants and the real estate on behalf of Centrum. "Usually, the criminal conduct of a third party is a superseding cause relieving the

9

negligent actor from liability. However, the tortfeasor's negligence will not be excused where the criminal conduct is a foreseeable result of such negligence." *Nixon v. Mr. Prop. Mgmt. Co., Inc.*, 690 S.W.2d 546, 550 (Tex. 1985). "In the landlord-tenant relationship, for example, a landlord who retains control over the security and safety of the premises owes a duty to a tenant's employee to use ordinary care to protect the employee against an unreasonable and foreseeable risk of harm from the criminal acts of third parties." *Centeq Realty, Inc. v. Siegler,* 899 S.W.2d 195, 197 (Tex. 1995) (citation omitted).

In light of the potential duty and perceived risk, Appellants' posted information concerning a perceived risk to the Centrum Building and its tenants in a place where it could be viewed and appropriately used. Giving the term "business activity" its plain meaning, Appellants' actions were consistent with their business of owning and managing property. Even if we found the term, "business activity," to be ambiguous, construing the policy strictly against St. Paul and liberally in favor of Appellants, would require that we find error in the district court granting summary judgment in favor of St. Paul.

Appellants furthermore contend that the district court erred in not granting summary judgment in favor of Appellants on St. Paul's late notice defense. The district court found that Appellants' actions relating to the termination of Perdue were not

"business activities" as required under the CGL policy and therefore, St. Paul had no duty to defend.  As it was not necessary in light of the district court's findings on the issue of "business activities," the district court did not reach the merits of St. Paul's late notice defense.  Therefore, we remand to the district court for determination of the merits of St. Paul's late notice defense.

Finally, Appellants argue that the district court erred in excluding Perdue's libel and libel *per se* claims as personal injury offenses.  "If coverage exists for any portion of a suit, the insurer must defend the insured in the entire suit." *St. Paul Fire & Marine Ins. Co. v. Green Tree Fin. Corp.-Tex.*, 249 F.3d 389, 391 (5th Cir. 2001) (citation omitted).  Because we have already concluded that the damages resulting from the personal injury offense of invasion of privacy were the result of Appellants' business activities, and barring some other defense are therefore covered under the CGL policy, it is not necessary for this court to consider the libel and libel *per se* claims.

## CONCLUSION

The district court will decide on remand the merits of St. Paul's late notice defense and determine whether St. Paul has a duty under the CGL policy to defend Appellants against the claims set forth in Perdue's underlying state court action.

AFFIRMED in part, REVERSED in part and REMANDED.

11