**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

No. 02-40530

_____

PETROCON ENGINEERING, INC.,

Plaintiff-Appellant,

v.

MAC EQUIPMENT, INC., d/b/a/ MAC FLOTRONICS,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Eastern District of Texas
(No. 1:00-CV-203)

_____

March 6, 2003

Before BENAVIDES, STEWART, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Mobil Chemical Company ("Mobil") hired Petrocon Engineering ("Petrocon") to re-work and

expand Mobil's facilities at its plant in Beaumont, Texas. Petrocon decided to out-source the

manufacture and supply of a Product Purge Vessel Extension with Bag House ("pressure vessel") and

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

1

submitted a request for quotation to MAC Equipment ("MAC").

Following an exchange of documents, Petrocon contracted with MAC to provide a pressure vessel in accordance with an engineering drawing that contained the following specifications:

| | |
|---|---|
| Radiography required | None |
| Joint efficiency (shell/head) | .70 |
| Shop hydro test pressure | 60 Psig |

MAC fabricated the vessel and the vessel passed the hydrostatic test in the presence of Petrocon's authorized inspector. After the vessel was delivered to Mobil, Mobil criticized Petrocon for agreeing to a 70% joint efficiency standard instead of an 85% standard. While connecting MAC's pressure vessel to the existing pressure vessel it was designed to extend, Mobil allegedly discovered welding defects. On its own initiative, Mobil x-rayed all the welds and, based on the results of the x-rays, paid roughly $225,000 to have the vessel re-welded. In part because of the cost involved in re-welding, Mobil withheld a payment to Petrocon of approximately $168,000.

Petrocon sued MAC for breach of contract, negligence, breach of implied warranties, and constructive fraud. MAC moved for summary judgment, which the district court granted, characterizing the dispute as concerning whether the contract documents specified a 70% or 85% joint efficiency standard and concluding the vessel satisfied the terms of the contract by passing the hydrostatic test associated with the 70% joint efficiency standard.

This Court reviews a motion for summary judgment *de novo*. *St. Paul Guardian Ins. Co. v. Centrum GS Ltd.*, 283 F.3d 709, 712-13 (5th Cir. 2002). We review the construction of an unambiguous contract *de novo*. *Clardy Mfg. Co. v. Marine Midland Bus. Loan*, 88 F.3d 347, 352 (5th Cir. 1996). The initial determination that a contract is ambiguous is itself a legal conclusion also subject to *de novo* review. *Id.* When a contract is ambiguous and its construction turns on the

2

consideration of extrinsic evidence, we review the district court's interpretation for clear error. *Id.*

Petrocon's arguments largely rest on the premise that the joint efficiency standard does not address weld quality, or in Petrocon's words: "joint efficiency means only the amount of welds subject to x-rays, but it has absolutely nothing to do with the substantive quality of the welds." This position is not supported by the guidelines from the American Society of Mechanical Engineers ("ASME") relating to pressure vessels, even though they do not mention porosity, incomplete penetration, excessive slag, non-fusion, or burn-through. In fact, joint efficiency has everything to do with weld quality: the only factor affecting joint efficiency is the expected quality of a weld.[1] Every joint efficiency below 100% is an express indication that a weld must be assumed to be less than perfect.

Petrocon argues MAC breached an express contract provision warranting the vessel would be "free from defects in material or workmanship." By agreeing to the 70% joint efficiency standard, the parties agreed to a test for what constitutes a "defect." MAC satisfied the contract's express warranty because the vessel passed the applicable test. This interpretation of the warranty does not make it duplicative of the contract provision requiring the hydrostatic test for several reasons, including the warranty's longer temporal duration. Given the parties' careful negotiations over joint

---

[1] When two steel plates are welded together, the joint between the plates is not as strong as the parent plates unless the weld is perfect. The reduction in strength is labeled "joint efficiency", which is measured as the ratio of the joint strength to the parent strength. A joint efficiency of 50% indicates the joint is half as strong as the parent plates; a joint efficiency of 100% indicates the joint is as strong as the parent plates. When designing a pressure vessel, an engineer must anticipate the efficiency of a joint in order to calculate other measurements. The *actual* efficiency of the joint, which will vary with the actual weld, is unknown. The ASME guidelines provide standards that allow engineers to assume maximum joint efficiencies depending on what test the vessel will be required to pass upon completion. If the vessel will be required to pass a given test *ex post* then the engineer can assume a joint efficiency of up to a given level *ex ante*. For the type of pressure vessel at issue, the ASME guidelines provide that if the vessel will be required to pass a hydrostatic test, then the engineer can assume a joint efficiency of up to 70%.

3

efficiency, it is not possible to conclude that the express warranty adopts, through the back door, the more stringent definition of defect associated with the 100% joint efficiency standard.

Petrocon claims MAC was negligent in its construction of the vessel. The district court dealt with this claim on the same basis it disposed of Petrocon's breach of express warranty claim: MAC fulfilled its duties to provide a vessel pursuant to the 70% joint efficiency standard. We affirm the district court's opinion on this issue.

Petrocon complains that MAC breached the implied warranties of merchantability and fitness. Texas law provides that goods are merchantable if they are "fit for the ordinary purposes for which such goods are used . . . ." TEX. BUS. & COMM. CODE § 2.314(b) (1994). Proof of breach of an implied warranty of merchantability can consist of demonstrating the product has a defect. *See Gen'l Motors Corp. v. Brewer*, 966 S.W.2d 56 (Tex. 1998). An implied warranty of fitness for a particular purpose occurs when the contracting party "has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods . . . ." TEX. BUS. & COMM. CODE § 2.315 (1994). MAC responds that it disclaimed any implied warranties of fitness and merchantability, which is permissible under Texas law. *See* TEX. BUS. & COM. CODE ANN. § 2.316 (Vernon 1994). The contract provides ample language to disclaim the implied warranties of fitness and merchantability:

> The foregoing warranties are in lieu of all other warranties, express or implied, including but not limited to the warranties of merchantability and fitness for a particular purpose.

For this reason, Petrocon's arguments lack merit.

Petrocon argues MAC perpetrated a constructive fraud. Constructive fraud results from a defendant's "breach of some legal or equitable duty which, irrespective of moral guilt, the law

4

declares fraudulent because of its tendency to deceive others, to violate confidence, or to injure the public interest." *Archer v. Griffiths*, 390 S.W.2d 735, 740 (Tex. 1964). In the course of constructing the vessel, MAC took two x-rays of welds. Petrocon contends the uncontroverted summary judgment evidence shows these x-rays were of a *different* vessel and that MAC actively hid evidence of defective workmanship and materials. Constructive fraud can only occur upon the breach of a duty. *Thompson v. Vinson & Elkins*, 859 S.W.2d 617 (Tex. App. 1993). The district court found MAC did not have a contractual duty to provide *any* x-rays. We agree.

In an apparent attempt to foreclose all of Petrocon's arguments against summary judgment, MAC attacks the admissibility and, in some instances, the relevance of most of Petrocon's evidence regarding alleged defects. Because the trial court did not disqualify or exclude any of the evidence to which MAC now objects, these issues are not before this Court.

Although the district court intimates that Petrocon's damages are too remote to be recoverable and cites *Hadley v. Baxendale*, 9 Exch. 341, 354 (1854), this Court need not reach this issue.

Because MAC delivered a pressure vessel which conformed to the requirements of its contract with Petrocon, and for the other reasons stated, we affirm the judgment of the district court.

AFFIRMED.

5