Adam CRAWFORD, Plaintiff,

v.

GUIDEONE MUTUAL INSURANCE COMPANY, Defendant.

No. CIV.A. 504CV313C–ECF.

United States District Court,
N.D. Texas,
Lubbock Division.

Feb. 21, 2006.

Damon C. Richards, Fargason Booth St. Clair & Richards, Lubbock, TX, for Plaintiff.

Leonard R. Grossman, Gary Bellair, Craig Terrill Hale & Grantham, Lubbock, TX, for Defendant.

## *ORDER*

CUMMINGS, District Judge.

On this day the Court considered GuideOne Mutual Insurance Company's ("Defendant") Re–Urged Motion for Summary Judgment, Brief in Support, and Appendix, filed with this Court on November 15, 2005. The Court further considered Adam Crawford's ("Plaintiff") Response to Defendant's Re–Urged Motion for Summary Judgment and Counter Motion for Partial Summary Judgment, Brief in Support, and Appendix, filed on December 5, 2005. De-

fendant failed to file a response to Plaintiff's Counter Motion for Partial Summary Judgment. After considering all relevant arguments and evidence, and the papers and pleadings filed in this case, the Court is of the opinion that Defendant's Motion for Summary Judgment should be **GRANTED** and Plaintiff's Counter Motion for Partial Summary Judgment should be **DENIED**.

## I.

### BACKGROUND [1]

█ This lawsuit is based on an alleged duty to defend Plaintiff under an insurance policy ("the Policy") issued by Defendant to Lubbock Christian University ("LCU"), Policy number 1200–313 with a policy period of June 1, 2000 through June 1, 2001. (Pl.'s App. pp. 40–66.) It is undisputed that the occurrence occurred on February 11, 2001–within the policy period. Ashley Pliler, the plaintiff in the underlying state court litigation, was injured during a practice for an entertainment event known as Master Follies. Plaintiff and Ashley Pliler were students at LCU at the time of the incident and members of Alpha Chi Delta, a social club on LCU's campus.

Master Follies is an LCU-organized and -sponsored event in which LCU social club organizations participate by creating and performing skits consistent with the theme of the event. Master Follies is coordinated and supervised by a committee composed exclusively of LCU employees. LCU maintains control over the Master Follies event and the skits performed by its social clubs. Ashley Pliler, Plaintiff, and other students were members of Alpha Chi Delta, one of several social clubs at LCU, which exists only on the campus of LCU. LCU sets guidelines, rules, and regulations that must be followed by Alpha Chi Delta and the other social clubs. LCU had appointed a committee of staff members to oversee the Alpha Chi Delta social club at the time of Ashley Pliler's incident. Apparently, the skit that Alpha Chi Delta was to perform, including the basket toss, was approved by the appropriate channels, or at least not disapproved. (Pl.'s App. at pp. 4–7, ¶ 8 ("described to the Master Follies Committee the skit, that there would be a basket toss included in the skit, and a video of the skit was made and given to the Master Follies Committee pursuant to the guidelines established by [LCU]. [LCU] was aware of the basket toss"); ¶ 15 ("The activities performed by the social clubs and their members at Master Follies are subject to the direction of [LCU] and they must present their skit within the scope of the directions and guidelines provided by [LCU].")).

Although LCU's social clubs may resemble fraternities, they are specifically defined as not being fraternities in the general sense of that term as used on college campuses. (Pl.'s App. at pp. 5–6, ¶¶ 5–6.) As stated above, LCU maintains control over the social clubs on its campus and

1. The Court notes that Defendant asked the Court to take judicial notice of the prior documents filed in this case. Because neither party included copies of the state court petitions in the current motions and response, the Court will take judicial notice of the state court petitions attached as part of appendixes to the previously filed, moot summary judgment motion. The state court petitions are essential to making coverage determinations.

The vast majority of properly supported factual evidence proffered by Plaintiff in his Response/Counter Motion is uncontested and unrebutted. "[T]he court will assume that the [counter-]movant's facts as claimed and supported by admissible evidence are admitted to exist without controversy, unless controverted in an opposing statement of genuine issues which is supported by proper summary judgment evidence." *Ceasar v. Lamar Univ.,* 147 F.Supp.2d 547, 550–51 (E.D.Tex.2001).

directs that Master Follies is a proper reflection of the University. Plaintiff was the President of Alpha Chi Delta at the time of the incident. LCU receives benefits from the Master Follies event in the form of aid in recruiting and public relations, as well as financially benefitting from ticket sales for the event. LCU directs the specific details of what a social club and its members can and cannot do. (Pl.'s App. at p. 5.)

Pliler filed suit only against LCU based on damages he suffered as a result of his injuries. Specifically, he asserted claims for personal injuries suffered during the practice for the club's Master Follies performance. Ashley Pliler was tossed into the air in a gymnastics-type procedure called a "basket toss." He sustained injuries when he suffered a fall after being tossed into the air and improperly caught upon his return downward. Pliler is alleged to have suffered a cracked skull, concussion, bleeding from his left ear, a degree of permanent hearing loss, and the loss of smell. Plaintiff was designated to be one of the tossers and catchers in the basket toss gymnastic procedure.

Following the filing of Pliler's lawsuit against LCU, upon the advice and insistence of the Defendant, LCU filed a third-party claim against Alpha Chi Delta and three members of the club, including Plaintiff. Apparently, LCU was "advised" to bring in these third parties in an effort to seek contribution and dilute any negligence finding that might ensue. (Def.'s App. at p. 32; Pl.'s App. at pp. 83–85.) Defendant maintained a right to control the litigation regardless of any moral ob-

jections by LCU's President against suing one of its own social clubs and the club's members. (Def.'s App. at p. 31; Pl.'s App. at pp. 84–86.) The testimony of LCU's President indicates that the three members of Alpha Chi Delta, and the club itself, were sued as third-party defendants by LCU under the belief that an opportunity might exist for third parties to pick up a part of the costs of the lawsuit by way of certain insurances that they might have and in hopes that the final judgment might find a division of liability thereby spreading the liability among more parties. (Pl.'s App. at pp. 83–84.) It was "suggested" by Defendant to include Plaintiff as a third-party defendant. (*Id.* at p. 84.) LCU's President testified that he had moral concerns about suing one of LCU's social clubs and three of its students, but he felt that there was a possibility that Defendant would withdraw its support in defending the Pliler suit. (*Id.* at p. 86.) At the time LCU was advised to bring in Plaintiff as a third-party defendant (apparently in the belief that other insurances might be available to be utilized by the third-party defendants), Plaintiff's parents apparently resided on the campus of LCU as dorm parents and thus had no homeowner's insurance in place to cover Plaintiff for the third-party claims advanced against him.[2] (Pl.'s App. at pp. 86–87.)

The third-party petition asserted negligence claims first against Plaintiff and two other individuals as "agents and/or representatives of Alpha Chi Delta, acting within the scope of their authority." (Docket 8 p. 20 (copy of third-party petition attached

---

**2.** It is not clear to the Court, nor were arguments made in the Briefs, as to what effect the fact that Plaintiff's parents lived on campus in a dorm as dorm parents would have on whether coverage should have been available to them in much the same way as a homeowner's policy would afford coverage. There were simply no facts in the record as to how the University covers such residences and occupants for insurance, if it does so at all. It may be that Defendant also insured the dorm parent residences in a manner similar to or as a homeowner's policy.

to prior summary judgment appendix)). The third-party claim against Plaintiff and the two other members of the club went on to allege that "[s]uch acts or omissions of the individuals Adam Crawford, Cody Batten and Kameron Barnett were the sole proximate cause of the incident in question, or in the alternative, at least a proximate cause...." (*Id.*) As to the claims against those three members, the third-party petition went on to allege that "these individuals were negligent in failing to catch [Pliler], thus preventing harm to Plaintiff while performing the 'basket toss' stunt." (*Id.*)

The third-party petition also alleged further claims against Alpha Chi Delta itself. The petition alleged that the "incident referenced above was the result of the negligence of Alpha Chi Delta by and through the acts and/or omissions of its authorized agent and/or representatives," (*id.*), and that the organization "was negligent in failing to properly supervise its members in the rehearsal of a skit including a 'basket toss' stunt in which [Pliler] was injured" and "in the design and implementation of its skit entry for the Master Follies Production by including the 'basket toss' stunt...." (*Id.*)

The claims against Alpha Chi Delta were not dropped until almost nine months after being filed when, prior to the judgment in the Pliler lawsuit, LCU non-suited Alpha Chi Delta. Defendant was advised in an opinion letter that it would be best for LCU to nonsuit the club because it might be construed by a court to be a covered insured under the Policy terms if certain facts were developed. (Def.'s App. at pp. 30–33; Pl.'s App. at p. 20.) The writer opined in the letter that if LCU maintained a third-party action against the club, it might be found that Defendant would also be an insurer of the club and thus be required to defend Alpha Chi Del-

ta from a suit brought by LCU-whom Defendant was already defending under the Policy. Moreover, the writer opined that LCU would be liable for any liability of its club by *respondeat superior* liability. Therefore, the opinion was offered that nothing would be accomplished by suing a third party through whom vicarious liability would flow. Shortly before trial, in mid-January of 2004, Alpha Chi Delta was non-suited.

The Pliler lawsuit went to trial in February of 2004 and the jury found LCU to be 55 percent negligent, Pliler himself to be 25 percent negligent, and Plaintiff along with another member of the club to each be 10 percent negligent (as stated, Alpha Chi Delta was dropped from the third-party suit prior to trial so no liability finding was made as to the club). The Pliler jury also found that at the time of the incident Plaintiff (as well as the club) was "acting in furtherance of a mission for the benefit of Lubbock Christian University and subject to control by Lubbock Christian University as to the details of the mission." (Pl.'s App. at p. 31.) In the Final Judgment, entered March 17, 2004, the state court ordered that LCU's third-party claims against Plaintiff be denied and that LCU take nothing in connection with those claims. (Pl.'s App. at p. 37.)

On at least two occasions Plaintiff has requested a defense under the Policy for the third-party claims advanced against him by LCU. Plaintiff made the requests formally in writing-first on November 11, 2003, and again on January 19, 2004. It is unclear if any response was ever given to Plaintiff as to his requests. The evidence suggests that Defendant never responded to the requests for coverage. (Def.'s App. at p. 26 (affidavit stating "neither I nor any other person affiliated with [Defendant] initiated any contact with [Plaintiff] or made any representations to him con-

cerning the existence of coverage"); Pl.'s App. at p. 22 ("I have heard nothing from you.")).

On May 28, 2004, after the trial and entry of judgment, Plaintiff's counsel sent two letters to Defendant demanding payment of Plaintiff's attorney's fees and expenses incurred in defending Plaintiff against the third-party claims as well as a similar demand for attorney's fees and expenses in defending Alpha Chi Delta for fees incurred prior to its being non-suited. Both demand letters were sent pursuant to the Texas Deceptive Trade Practices Act, Tex. Bus. & Comm.Code §§ 17.01 *et seq.* ("DTPA"), and the Texas Insurance Code, Tex. Ins.Code § 21.21, as is required prior to bringing suit for such claims. The Alpha Chi Delta demand was resolved amicably. Though the reasons for resolution of the Alpha Chi Delta demand are not clear, the Court notes that the opinion letter issued to Defendant regarding coverage under the Policy states that facts could possibly be developed that would indicate coverage of Alpha Chi Delta as an organization under the control of LCU and by way of classic *respondeat superior* liability. (Def.'s App. at pp. 30–33.) The Pliler jury specifically found that on the occasion in question, "Alpha Chi Delta and its members, particularly Adam Crawford, Cody Batten, and Ashley Pliler act[ed] in the furtherance of a mission for the benefit of Lubbock Christian University and subject to control by Lubbock Christian University as to the details of the mission." (Pl.'s App. at p. 31.) The opinion letter was, in this sense, prescient.

The opinion letter made the statement that it was ironic LCU was directed to sue Alpha Chi Delta and three of the club's members because if it were to be found that Defendant had a duty to provide a defense to the club and its three student members who were sued, then Defendant would be in the position of paying several sets of lawyers (for LCU, Alpha Chi Delta, and the three club members) to fight against one another. (Def.'s App. at p. 29.)

## II.

### PROCEDURAL HISTORY

Plaintiff filed this lawsuit on November 23, 2004, and it was removed by Defendants on December 30, 2004, from the 72nd Judicial District Court of Lubbock County, Texas. Defendant filed its Second Amended Answer on January 27, 2005. On May 11, 2005, Defendant filed its Motion for Summary Judgment and supporting brief and appendix. Plaintiff filed his Response to said Motion on May 31, 2005, along with a brief in support and an appendix. On July 1, 2005, this Court denied as moot the then-pending Motion for Summary Judgment because the Defendant had argued for summary judgment based upon one policy and Plaintiff had made arguments in his Response based upon that same policy and an additional policy. The Court determined that in order to prevent confusion of the issues, the Plaintiff should amend his Complaint to reflect which policy or policies of insurance he wished to pursue claims under. Thus, the Court denied as moot the then-pending Motion for Summary Judgment and ordered Plaintiff to amend his Complaint by July 20, 2005. The Court further instructed the parties that they would later be able to file new motions for summary judgment addressing the amended complaint. Plaintiff filed his First Amended Complaint on July 7, 2005. Defendant proceeded on its previously filed Second Amended Answer.

On November 15, 2005, Defendant filed the pending Re-urged Motion for Summary Judgment, along with supporting brief and appendix. Plaintiff filed his Re-

sponse and Counter Motion for Partial Summary Judgment on December 5, 2005, along with supporting brief and appendix. Defendant failed to file a response to Plaintiff's Counter Motion. This case is set for trial on March 6, 2006.

### III.

#### *STANDARD*

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (internal quotations omitted). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* at 248, 106 S.Ct. 2505. In making its determination, the court must draw all justifiable inferences in favor of the non-moving party. *Id.* at 255, 106 S.Ct. 2505. Once the moving party has initially shown "that there is an absence of evidence to support the nonmoving party's case," *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the non-movant must come forward, after adequate time for discovery, with significant probative evidence showing a triable issue of fact. FED. R. CIV. P. 56(e); *State Farm Life Ins. Co. v. Gutterman,* 896 F.2d 116, 118 (5th Cir.1990). Conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation are not adequate substitutes for specific facts showing that there is a genuine issue for trial. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1428 (5th Cir.1996) (en banc); *SEC v.*

*Recile,* 10 F.3d 1093, 1097 (5th Cir.1993). To defeat a properly supported motion for summary judgment, the non-movant must present more than a mere scintilla of evidence. *See Anderson,* 477 U.S. at 251, 106 S.Ct. 2505. Rather, the non-movant must present sufficient evidence upon which a jury could reasonably find in the non-movant's favor. *Id.*

In reviewing the summary judgment evidence, "Rule 56 does not impose upon this Court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Ragas v. Tenn. Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir.1998). Rather, the Court need rely only on those portions of the submitted documents to which the non-moving party directs the Court's attention. *Id.; see also Forsyth v. Barr,* 19 F.3d 1527, 1536–37 (5th Cir.1994) (finding that two volumes of summary judgment evidence was insufficient to preclude summary judgment when plaintiffs failed to identify specific portions which supported their claims).

Rule 56(e), Federal Rules of Civil Procedure, requires the party against whom the motion is made to "set forth specific facts showing that there is a genuine issue for trial." Absent such a showing, a properly supported motion for summary judgment should be granted. *See Eversley v. MBank Dallas,* 843 F.2d 172, 173–74 (5th Cir.1988); *Resolution Trust Corp. v. Starkey,* 41 F.3d 1018, 1022–23 (5th Cir.1995). An actual controversy of fact exists only where both parties have submitted evidence of contradictory facts. *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir.1999). "A party whose motion or response is accompanied by an appendix must include in its brief citations to each page of the appendix that supports each assertion that the party makes concerning

the summary judgment evidence." LR 56.5(c).

## IV.

### DISCUSSION

#### Duty to Defend

A plaintiff bears the initial burden of showing that a claim alleged in the underlying lawsuit is potentially within the scope of coverage of an insurance policy. *See Data Specialties, Inc. v. Transcontinental Ins. Co.*, 125 F.3d 909, 911 (5th Cir.1997). Under Texas law, a court determines an insurer's duty to defend by following the "Eight Corners" or "Complaint Allegation" rule. *St. Paul Guardian Ins. Co. v. Centrum GS Ltd.*, 283 F.3d 709, 713 (5th Cir.2002). According to this rule, the court examines only the allegations in the underlying complaint (for which a duty was sought) and the insurance policy in determining whether a duty to defend exists. *Id.* "The duty to defend arises when a third party sues the insured on allegations that, if taken as true, *potentially* state a cause of action within the terms of the policy." *Id.* (emphasis added). The duty to defend "is not affected by facts ascertained before suit, developed in the process of the litigation, or by the ultimate outcome of the suit." *TRI Core Inc. v. Northland Ins. Co.*, 2002 WL 31548754, *4 (N.D.Tex.2002) (quoting *Am. Alliance Ins. Co. v. Frito–Lay, Inc.*, 788 S.W.2d 152, 154 (Tex.App.-Dallas 1990, writ dism'd)). Rather, the duty to defend exists if the complaint/petition contains at least one claim that is facially within the policy's coverage. *Id.; see also Lafarge Corp. v. Hartford Cas. Ins. Co.*, 61 F.3d 389, 393 (5th Cir.1995); *Rhodes v. Chicago Ins. Co.*, 719 F.2d 116, 119 (5th Cir.1983); *Scottsdale Ins. Co. v. Travis*, 68 S.W.3d 72, 75 (Tex. App.—Dallas 2001, pet. denied).

When applying the eight corners rule, the allegations in the underlying complaint should be given a liberal interpretation. *Nat'l Union Fire Ins. Co. v. Merchants Fast Motor Lines*, 939 S.W.2d 139, 141 (Tex.1997). "Stated differently, in case of doubt as to whether or not the [factual] allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt must be resolved in insured's favor." *Id.* "In Texas, an insurer's contractual duty to defend must be determined from the face of the pleadings, without reference to any facts outside the pleadings." *Id.* at 142.

"When the words of a policy are unambiguous, they are to be given their plain, ordinary, and generally accepted meaning, unless the policy clearly indicates that the contractual terms have been used in a different or technical sense." *Gulf Chem. & Metallurgical Corp. v. Associated Metals & Minerals Corp.*, 1 F.3d 365, 369 (5th Cir.1993). The determination of whether an ambiguity exists in a contract is a question of law. *Kelley–Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex.1998). A contract is ambiguous if it is susceptible to more than one meaning. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). Where the policy language is susceptible to more than one construction, it should be "construed strictly against the insurer and liberally in favor of the insured." *Gulf Chem.*, 1 F.3d at 369 (internal quotation mark omitted). The general rule, then, is that a court must determine the intention of the parties as expressed in the language of the policy. *See Kelley–Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex.1998). Consideration must be given to all the provisions, with reference to the contract as a whole rather than to any single provision. *Coker v.*

*Coker,* 650 S.W.2d 391, 393 (Tex.1983). Each provision should be given meaning so that coverage is not illusory. *See Trinity Universal Ins. Co. v. Cowan,* 945 S.W.2d 819, 828 (Tex.1997). When ambiguity exists, a court may properly consider extrinsic evidence on the duty to defend only in the very narrow circumstance of "where fundamental policy coverage questions can be resolved by readily determined facts that do not engage the truth or falsity of the allegations in the underlying suit." *Northfield Ins. Co. v. Loving Home Care, Inc.,* 363 F.3d 523, 530 (5th Cir.2004) (citing *Westport Ins. Corp. v. Atchley, Russell, Waldrop & Hlavinka, L.L.P.,* 267 F.Supp.2d 601, 621 (E.D.Tex.2003)).

### *Analysis*

■■■ The central allegations in the First Amended Complaint require that the terms and provisions of the Policy first be determined. Plaintiff specifically advances claims only under Article 21.21 of the Texas Insurance Code and the Texas Deceptive Trade Practices Act. (Pl.'s First Am. Compl.) Defendant argues in its Re-urged Motion that none of the factual allegations in the Second Amended Third Party Complaint raised even the possibility that Plaintiff was an insured such that there would have been a duty to defend at the time Plaintiff requested a defense. What Defendant is asking for in moving for summary judgment is a finding that Plaintiff has failed to state a claim or that he lacks standing to assert the claims. (See Def.'s Br.) Defendant alternatively argues that it did not breach the duty of good faith and fair dealing because a bona fide controversy over coverage existed that created a reasonable basis for denial of coverage. *Defendant does not argue any exclusions* listed in the Policy.

The Declaratory Judgment Act states that federal courts, "upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). It appears from the arguments made by Defendant in its Brief that it intended for this Court to determine whether Plaintiff was an insured under the Policy. The only relevant coverage issue is whether there was a duty to defend. Thus, as to the issues in this case, the Court must interpret the provisions stating who is an insured under the Policy.

The following provisions are the only ones argued to apply in order to create coverage:

SECTION I COVERAGES

COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

 1. Insuring Agreement

 a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.

 * * * * * *

SECTION II WHO IS AN INSURED

 * * * * * *

 5. a. The following persons or organizations are also insureds:

 (1) Any of your members, but only with respect to their liability for your activities or activities they perform on your behalf, at your direction and within the scope of their duties.

 * * * * * *

(4) Any organization or entity authorized or controlled by you.

\*　　\*　　\*　　\*　　\*　　\*

(Pl.'s App. at pp. 48, 55 and 57.)

 The duty to defend is determined by consulting the latest amended pleading upon which the insurer based its refusal to defend the action. *Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co.*, 99 F.3d 695, 701 (5th Cir.1996). As the only evidence before the Court as to the third-party claims is the Second Amended Third Party Petition, the Court cannot determine if any of the prior third-party petitions alleged claims possibly invoking coverage at an earlier date. *See Nutmeg Ins. Co. v. Clear Lake City Water Auth.*, 229 F.Supp.2d 668, 677 n. 2 (S.D.Tex.2002) (the issue of a duty to defend could relate to prior-filed claims while they were pending).

*Plaintiff's Coverage Arguments*

Plaintiff begins by arguing that the Policy "includes 'persons or organizations ... with respect to their liability for your activities or activities they perform on your behalf at your direction and within the scope of their duties.'" (Pl.'s Br. at p. 5.) Plaintiff argues that he is an insured because he was found by the jury at the conclusion of the state court action to have been acting in furtherance of a mission for the benefit of and subject to the control of LCU. The gist of Plaintiff's argument is that he was acting for a principal and is entitled to coverage for the costs of defending the third-party claims advanced against him by LCU. Plaintiff further argues that because he has been found to have been acting in furtherance of a mission for the benefit of and subject to the

control of LCU, Defendant is collaterally estopped from arguing otherwise and thus a duty to defend existed under either the "Members Provision" or the "Organization Provision." No other provisions were argued.[3] In concluding his arguments after presenting the law on agency relationships, summarily and in one short paragraph, Plaintiff argues that the "Members Provision" and "Organization Provision" entitle him to status of insured because he is the member of an organization authorized or controlled by LCU. Plaintiff apparently seeks coverage by binding the two provisions together and argues that he was a member of an organization controlled or authorized by LCU. Specifically he argues that "Crawford was an agent of Alpha Chi Delta, who was authorized and controlled by LCU and, thus, Crawford is a covered insured...." (Pl.'s Br. at p. 11.)

 Defendant argues, in relation to the state court finding, that facts ascertained at the conclusion of a suit do not invoke a duty to defend. Defendant correctly argues that facts ascertained in the process of the litigation or by the ultimate outcome have no effect upon a duty to defend because no duty to defend exists unless the third-party petition alleged facts against an insured that were within the coverage provided under the insuring agreement. (Def.'s Br. at p. 7); *see American Alliance Ins. Co. v. Frito–Lay, Inc.*, 788 S.W.2d 152, 154 (Tex.App.-Dallas 1990, writ dism'd). Moreover, Defendant argues that a court is to apply the eight-corners rule without reference to the veracity of factual allegations, to what the parties know or believe the facts to be, or to any legal determination of the facts. *Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co.*, 387 S.W.2d 22, 24 (Tex.1965).

---

**3.** The Court makes no findings nor does it analyze whether coverage might have existed under a different theory or provision.

Defendant argues that even though the jury found Plaintiff to be acting in furtherance of a mission benefitting LCU, such a finding was not made until the conclusion of the trial and nothing in the third-party petition alleged as much. Thus, Defendant argues that the duty to defend Plaintiff did not exist at the two times Plaintiff made written requests for a defense during the underlying state litigation because nothing in the state petition triggered the duty by alleging facts that might have been construed as implying that Plaintiff was an insured.

### a. "Member Provision"

Plaintiff argues for coverage under the "Members Provision" in that he is a member of Alpha Chi Delta and thus a member of LCU because the club was found at the end of the trial to have been acting in furtherance of and subject to the control of LCU at the time of the occurrence. Plaintiff argues that he is covered because he was judicially found to have been acting under the control and for the benefit of LCU. Thus, Plaintiff argues, he is an insured under the "Members Provision" while acting on behalf of LCU and the club. Plaintiff's argument seems to recognize that all students would not and could not be covered under the provision (a separate provision exists for student coverage in a very limited circumstance). However, he argues that members of the on-campus social clubs, under the authorization and control of LCU and while performing and preparing for Master Follies, are covered.

The argument advanced by Defendant is that regardless of a jury finding after the fact that he was acting in furtherance of a mission and subject to the control of LCU, any duty to defend arises from the Second Amended Third Party Petition and that petition did not allege that Plaintiff was a member of LCU or any facts that could have been construed as alleging as much. Alternatively, Defendant argues that because the petition did not allege facts that would allow for the determination of whether Plaintiff was a "member," the Court should look to extrinsic evidence-LCU's restated Articles of Incorporation.

The Court will first begin with the Policy. The term "member" is undefined in the Policy. The opinion letter recognized that the term "members" goes undefined in the Policy.[4] But, the general rule is that a court must determine the intention of the parties as expressed in the language of the policy. *See Kelley–Coppedge, Inc. v. Highlands Ins. Co.,* 980 S.W.2d 462, 464 (Tex.1998). Consideration must be given to all the provisions, with reference to the contract as a whole rather than to any single provision. *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983). Each provision should be given meaning so that coverage is not illusory. *See Trinity Universal Ins. Co. v. Cowan,* 945 S.W.2d 819, 828 (Tex.1997). Upon review of the Policy, the Court finds that the Policy does reference "members" in other provisions. (Pl.'s App. at 55–57 (using the term "member" as relating to joint ventures and limited liabil-

---

[4] The writer opined in the opinion letter that coverage would not likely be found under a provision including "members." It opined that if the coverage under said provision was sought under the belief that, merely as a student of LCU, Plaintiff was entitled to coverage, such an assertion would likely fail because "registered students" were covered in a limited manner under another provision. (Def.'s App. at pp. 33–34; Pl.'s App. at pp. 57 (policy provision on registered students whose courses of study include mandatory on-the-job training)). The letter correctly opined that classifying all students as members would render the Policy's restrictions on "registered students" meaningless. (Def.'s App. at p. 34.) The letter did not directly address "member" as applied to members of LCU's social clubs or as an agent of LCU itself.

ity companies)). Thus, from the four corners of the Policy, it appears that the term "members" is intended to refer to the make up of joint ventures, limited liability companies, and partnerships. The provisions under Section II, "Who Is An Insured," allow for the coverage of members of joint ventures, partnerships, and limited liability companies *but only if* the named insured is designated as such an entity in the Declarations. (Pl.'s App. at pp. 55–56.) The Declarations page of the Policy clearly states that LCU is a corporation and not one of these other types of entities. (Pl.'s App. at 46.) Even if the term were to be considered as ambiguous, when resolving the ambiguity, a court can admit extraneous evidence to determine the meaning of the provision. Defendant has proffered LCU's Articles and Restated Article of Incorporation as extrinsic evidence that LCU has no "members." (Def.'s Br. at 10 (citing to App. at pp. 3 and 7 for the argument that "[w]hile the pleadings [in the third-party petition] are un-enabling, LCU's restated articles of incorporation resolve the coverage issue ... by establishing that LCU is a non-profit corporation who has no members.")). The cited portions of LCU's Articles and Restated Articles state "[t]he Corporation has no members" and "[t]he Corporation shall have no members." (Def.'s App. at 3 and 7.)

Thus, the Court finds that the term "member" as used in the provision relied upon by Plaintiff was intended to apply in the same manner that "member" is used in other provisions in the Policy. Such a construction does no harm to the usage of the term in other provisions throughout the Policy-in fact, such a construction is the only logical one. The rules favoring insureds in interpreting a policy as opposed to the insurer's interpretation are applicable only when there is ambiguity in the policy; if the term is susceptible to only one reasonable construction, the rules do not apply. *Canutillo Indep. Sch. Dist.*, 99 F.3d at 701. Moreover, if any ambiguity did exist, extrinsic evidence has been offered that states that LCU has no members. Plaintiff does not qualify as an insured under the "member" provision for additional insureds even though he was found to have acted in furtherance of a mission benefitting and subject to the control of LCU. Rather, the Court finds that the "Members Provision" is referring to members of a joint venture, partnership, or limited liability company. This comports with how the term is used in other provisions of the Policy.

b. "Organization Provision"

▮ Similar to his argument above, Plaintiff argues that he was covered under the "Organization Provision" because he was sued for acting within the scope of authority allegedly granted to him by the club. Apparently, relying upon the vicarious liability allegations against him in the third-party complaint, Plaintiff seeks coverage for the claims advanced against Alpha Chi Delta for his acts alleged to have been committed as an agent of the club. Here, the third-party petition clearly alleged claims against Alpha Delta Chi and separate claims against Plaintiff for his alleged negligence in failing to catch Pliler. Thus, the claims are not interdependent upon each other. Either, neither, or both could have been found liable. *See New York Life Ins. Co. v. Travelers Ins. Co.*, 92 F.3d 336, 340 (5th Cir.1996) ("A claim against a principal is 'related' to and 'interdependent' on a claim against an agent if the claim against the principal would not exist absent the claim against the agent."). Although, as argued by Plaintiff, a corporation acts through its representatives and agents, *see Hammerly Oaks, Inc. v. Edwards*, 958 S.W.2d 387, 391 (Tex.1997),

Plaintiff was also sued individually for negligence claims beyond those asserted in his agency capacity.

Defendant also argues that the provision does not express an intent to cover agents of an organization in that it is intentionally silent as to agents of a covered organization. Defendant also argues that at the time of the third-party claims, no allegations were made regarding whether the club was an organization that LCU "authorized or controlled." Thus, Defendant argues that no duty arose under the "Organization Provision" to defend Plaintiff because the third-party petition failed to allege facts relating to whether LCU authorized or controlled Alpha Chi Delta-allegations that would have triggered possible coverage for the club by way of the "Organization Provision." Defendant argues that based upon the third-party petition, there was no reason that Defendant knew or should have known that a duty to defend might possibly exist because the third-party petition failed to make any mention of the control and authorization LCU exerted over the club. Defendant argues that it could not have known from the allegations in the third-party petition that the club was possibly covered under the "Organization Provision," much less the Plaintiff. Defendant also implies that any coverage that might have existed as to the *respondeat superior* claims advanced against Alpha Chi Delta by way of individuals' acts, dissolved when the club was non-suited.

The Court agrees with Defendant that, at all times during the underlying litigation, no allegations in the Second Amended Third Party Petition invoked the possibility of a duty to defend pursuant to the "Organization Provision." Said Petition did not allege any facts as to control or authorization over Alpha Chi Delta by LCU. Moreover, Plaintiff himself is clearly not an organization under the control or authorization of LCU. No arguments were advanced as to whether he might qualify as an "entity" under the "Organization Provision"—thus, the Court will not analyze such.

### Extra-contractual Claims

The issue before this Court is that Plaintiff's only causes of action advanced in his First Amended Complaint are that Defendant violated Article 21.21 and the DTPA. "In Texas, if a liability insurer wrongfully refuses to defend a suit filed against its insured, ... then the insured may, in a separate suit instituted against the insurer for that purpose, recover judgment for the total expenses of [its] defense ...." *General Motors Corp. v. Am. Ecology Environmental Servs. Corp.*, 2001 WL 1029519, *8 (N.D.Tex. Aug.30, 2001) (citing *Texas United Ins. Co. v. Burt Ford Enters., Inc.*, 703 S.W.2d 828, 835 (Tex.App.-Tyler 1986, no writ)). Thus, there is a basic premise that the *insured* bring the suit for an alleged failure to defend. As stated above, Plaintiff was not an insured under the two provisions argued. Plaintiff clearly was not a "member" as the Policy and the parties thereto intended that term to be used in the Policy. Moreover, it is clear that he is not an "organization" authorized or controlled by LCU.

Although the vicarious liability claims may have imposed a duty for Defendant to provide a defense for Alpha Chi Delta or LCU due to their possible exposure under *respondeat superior* liability, that duty went only to Alpha Chi Delta and/or LCU as covered insureds (Alpha Chi Delta is possibly an insured by way of the "Organization Provision"). Nothing in the third-party petition invoked a duty to defend Plaintiff unless Plaintiff could show that the Policy covered *him* as an insured, thereby creating a duty to him. Here, any possible breach of the duty to defend LCU

or an organization it controls or authorizes is a claim for the proper insured to bring. Any breach of the duty to defend under the Policy to a proper insured cannot be advanced by Plaintiff absent an assignment of rights. Plaintiff is not an insured under the argued provisions of the Policy and has no standing to bring claims premised upon the breach of a duty to defend-a duty owed to the proper insureds.

▬▬▬ However, Texas also allows for a third-party beneficiary to bring a suit. A third-party beneficiary who is not a party to the contract will still have a cause of action to enforce the contract if that contract was made for that person's benefit. *Quilter v. Wendland*, 403 S.W.2d 335, 337 (Tex.1966). And such a third-party beneficiary can possibly seek to recover attorney's fees under the contract if the third party is a claimant for damages under a policy that statute requires be in place. *Dairyland County Mut. Ins. Co. of Tex. v. Childress*, 650 S.W.2d 770, 775 (Tex.1983). Plaintiff does not appear to be, nor was the argument made that he was, an intended third-party beneficiary of the contract. Nothing in the Policy indicates a desire for third-party beneficiary status to apply to Plaintiff. "[A] third party beneficiary may qualify as a consumer of goods or services, as long as the transaction was specifically required by or intended to benefit the third party and the good or service was rendered to benefit the third party." *See Lukasik v. San Antonio Blue Haven Pools, Inc.*, 21 S.W.3d 394, 401 (Tex.App.-San Antonio 2000, no pet.) (citing *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 815 (Tex.1997)).

▬▬▬ In order to impose liability upon an insurer for violations of Article 21.21 and the DTPA, Texas law requires that an *insured* show that it is entitled to recover for a breach of the duty of good faith and fair dealing. *See, e.g., Hamburg-er v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 880 (5th Cir.2004). Plaintiff cannot advance claims under Article 21.21 or the DTPA against Defendant for any alleged breach of a duty to defend because he is not an insured under the Policy provisions argued. *Rumley v. Allstate Indem. Co.*, 924 S.W.2d 448, 450 (Tex.App.-Beaumont 1996, no writ) (while a third party might ultimately benefit from a bad faith claim which the insured might pursue against insurer, that duty is owed to insured and not third party because third-party claimant has no standing to assert extra-contractual and statutory claims against insurer for the denial and delay in the payment of claim). "Absent privity of contract or some sort of reliance by the person bringing the claim on the words or deeds of the insurer, a suit will not lie under art. 21.21." *See Palma v. Verex Assurance, Inc.*, 79 F.3d 1453, 1456 (5th Cir.1996) (citing *Warfield v. Fidelity & Deposit Co.*, 904 F.2d 322, 327 (5th Cir. 1990)). "Texas law does not recognize bad-faith claims beyond the contractual privity between the insurer and the insured." *Gisentaner v. U.S. Fire Ins. Co.*, 1999 WL 339329, *5 (Tex. App–Houston [1st Dist.] 1999, pet. denied) (citing *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 697 (Tex.1994)). The "obligations imposed by art. 21.21 of the Insurance Code ... are engrafted onto the contract between the insurer and insured and are extra-contractual in nature." *See Allstate Ins. Co. v. Watson*, 876 S.W.2d 145, 149–50 (1994).

▬▬▬ Moreover, Plaintiff is clearly not a consumer in that he is actually a third party and stranger to the insurance contract. *See* Tex. Bus. & Comm.Code § 17.45(4). The question of consumer status under the DTPA is a question of law for the court to decide, unless there is a dispute concerning factual issues that create consumer status. *See Lukasik*, 21

S.W.3d at 401. Nor is Plaintiff an additional insured under the Policy as discussed above. For a claim brought pursuant to the Texas Business and Commerce Code § 17.46(b)(5), a plaintiff must be a consumer seeking to acquire "goods or services." *Webb v. Int'l Trucking Co., Inc.,* 909 S.W.2d 220, 227–28 (Tex.App.-San Antonio 1995, no writ). Plaintiff was clearly not a consumer in relation to acquiring this Policy; thus, he cannot bring a claim under § 17.46(b)(5). Yet, § 17.46(b)(12) does not require consumer status, and does not involve a seeking to acquire goods or services by purchase or lease. *Id.* However, Plaintiff failed to direct the Court to evidence to support the allegation that Defendant represented that the Policy involved rights, remedies, or obligations which it did not have or involve. Thus, there is no genuine issue of material fact as to this claim. Summary judgment is proper as to the § 17.46(b) claims. Plaintiff also does not have standing to recover for any "unconscionable course of conduct" under Section 17.50(a)(4) because actions under Section 17.50 are only available to consumers. *See Webb,* 909 S.W.2d at 227.

■■■ Additionally, Plaintiff does little to elaborate upon his Article 21.21 and DTPA claims. As correctly argued by Defendant, "[t]o the extent, if any, that Crawford states an extra-contractual claim predicated on allegations other than bad-faith conduct, the Court may dismiss those claims under the authority of section (c) of Rule 12 of the Federal Rules of Civil Procedure because the conclusionary allegation of his pleading, which does little more than regurgitate statutory language, is insufficient to avoid dismissal for failure to state a claim." (Def.'s Br. at 11 (citing *Watson v. State Farm Lloyds,* 56 F.Supp.2d 734, 736 (N.D.Tex.1999))).

■■■ Finally, Defendant also argues that a bona fide controversy exists as to coverage and thus it had a reasonable basis to deny coverage. *Lyons v. Millers Cas. Ins. Co. of Tex.,* 866 S.W.2d 597, 600 (Tex.1993). The Court agrees that a bona fide controversy did exist at the time the requests for a defense were made and Defendant thus had a reasonable basis for denying coverage at the time. It was not reasonably clear at the time the requests were made in November of 2003 and January of 2004 that Plaintiff could possibly be covered as an insured.

## V.

## *CONCLUSION*

Having considered all the relevant arguments and evidence, the Court finds that Plaintiff was not an insured under the two provisions of the Policy argued. Therefore, Plaintiff was not entitled to his own defense under these provisions. Any breach of a duty to defend a properly covered insured from which Plaintiff would have benefitted incidentally is not a claim which Plaintiff can bring. The Court finds that, as asserted, Defendant cannot be liable for the claims advanced by Plaintiff under Article 21.21 and the Texas Deceptive Trade Practices Act. Thus, Defendant's Re-urged Motion for Summary Judgment is **GRANTED**. Plaintiff's Counter *Motion* for Partial Summary Judgment is **DENIED**. Plaintiff's claims against Defendant, as advanced, are hereby **DISMISSED**.[5]

---

5. The Court does not condone Defendant's actions in the handling of and control of the state court litigation. However, it does not appear that Plaintiff was an insured under the two provisions argued. Plaintiff relies heavily upon the final findings in the state court proceeding as entitling him to recover the costs of his defense in that matter. It may be that

The trial setting of March 6, 2006, is hereby **VACATED.**

Plaintiff should have sought damages from LCU for the costs of defense based upon that finding. In turn, LCU would have sought coverage under its insurance policy for a claim advanced against it. Or Plaintiff might possibly have sought coverage for indemnity of his costs in defending the third-party claims under the "volunteer worker provision" based on the state court findings that he acted in furtherance of a mission under the control of LCU. Such a claim would not be for coverage seeking damages based on "bodily injury" to a co-volunteer (which would be excluded) but, instead, seeking damages incurred in defending a suit brought against him for acts committed while acting in the scope of duties as a volunteer. However, the Court makes no conclusion as to such a claim at this time because it was not raised.